UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ESTATE OF BRUCE A. HAAG,

Plaintiff,

v.

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,

Defendant.

CIVIL NO. 01-1725 (DSD/JMM)

REPORT AND RECOMMENDATION

The above matter came on for hearing before the undersigned on January 16, 2002 upon Plaintiff's Motion to Remand [Docket No. 17]. Daniel B. Honsey, Esq. appeared on behalf of Plaintiff; Eric C. Tostrud, Esq. appeared on behalf of Defendant. A remand order is case dispositive under 28 U.S.C. § 636(b), and is to be decided by the District Court. First Union Mortgage Corp. v. Smith, 229 F.3d 992 (10th Cir. 2000), In re U.S. Healthcare, 159 F.3d 142 (3d Cir. 1998), and Vogel v. U.S. Office Products Co., 258 F.3d 509 (6th Cir. 2001). Accordingly, our decision is rendered in the form of a Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636 (b)(1)(B).

Upon the following Findings of Fact/Report, it is recommended that Plaintiff's Motion to Remand [Docket No. 17] be granted.

**FINDINGS OF FACT/REPORT**

Plaintiff's Complaint alleges that Bruce Haag was an insured under a policy of life insurance issued by Defendant, and that Plaintiff is a beneficiary under that policy. Minnesota Statute § 61A.011, subd. 1 requires an insurance company to pay interest upon the proceeds of a life insurance policy from the date of death until the date on which the

FILED FEB 21 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

proceeds are paid.[1] Plaintiff alleges that Defendant failed to pay interest as required by this law. The Complaint seeks recovery of interest on behalf of Plaintiff and a class of persons who were denied the interest on the proceeds of their insurance due under this statute.

Defendant's Amended Answer "admits that it has not paid interest to Plaintiff." (Docket No. 10, paragraph 18). It alleges, however, that no interest was due. It alleges that "ERISA preempts any state law claims or procedural remedies." (Amended Answer, paragraphs 3, 4, 16, 18 and 20).[2] Within the time limits and under the procedure prescribed by law, Defendant caused the Complaint to be removed to federal court. Plaintiff now brings this Motion to Remand.

**ANALYSIS**

Consideration of the Motion to Remand is governed by the "well-pleaded complaint" rule explained by the Supreme Court in Caterpillar, Inc. v. Williams, 482 U.S.

---

1

Minn. Stat. § 61A.011, Subdivision 1:

> "Notwithstanding any other provision of law, when any insurer, including a fraternal benefit society, admitted to transact life insurance in this state pays the proceeds of or payments under any policy of life insurance, individual or group, such insurer shall pay interest at a rate not less than the then current rate of interest on death proceeds left on deposit with the insurer, computed from the insured's death until the date of payment, on any such proceeds or payments payable to a beneficiary residing in this state, or to a beneficiary under a policy issued in this state, or to a beneficiary under a policy insuring a person resident in this state at the time of death. If the insurer has no established current rate of interest for death proceeds left on deposit with the insurer, then the rate of interest to be paid under this subdivision shall be the rate of interest charged by the insurer to policy holders for loans under the insurer's policies."

2

As an Affirmative Defense, Defendant alleges: "ERISA preempts any state law claims or remedies Plaintiff purports to assert."

386, 392 (1987):

> "Absent diversity of citizenship, federal-question jurisdiction is required. The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."

The parties also do not dispute that Defendant, as the party seeking removal, has the burden of establishing federal jurisdiction. E.g. In re Business Men's Assurance Co. of America, 992 F.2d 181 (8th Cir. 1993).

There are two competing Congressional mandates at issue when considering preemption in this case: the first is the goal of complete federal preemption of state laws governing ERISA plans, as expressed in 29 U.S.C. § 1144 (a), relied upon by Defendant:

> "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."

Numerous authorities have underscored the duty of the Courts to enforce this policy. See e.g., Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58 (1987). The Parties agree that the State law in question relates to an employee benefit plan as described in ERISA, 29 U.S.C. § 1144(a). Therefore, the state law relied upon by Plaintiff would be superceded by federal law unless it is saved by the "savings clause" in subsection (b)(2)(A).

The other policy of Congress is equally clear, however. Congress does not intend to preempt state laws which regulate insurance. This second policy finds expression in the ERISA "savings clause" in 29 U.S.C. § 1144(b)(2)(A), relied upon by

Plaintiff:

> "Except as provided in subparagraph (B), [which the parties agree does not apply here] nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." (Emphasis supplied).

The Court is now called upon to determine whether Minn. Stat. § 61A.011, subd. 1, a particular section of the Minnesota Statues regulating Life Insurance, "regulates insurance" as that phrase is used in the ERISA savings clause, 29 U.S.C. § 1144(b)(2)(A). A court is to first approach the question from the "common sense" point of view. Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 740 (1985); Express Scripts, Inc. v. Wenzel, 262 F.3d 829, 834 (8th Cir. 2001). It seems obvious that this section of the Minnesota law, which regulates the terms of life insurance policies, passes the common-sense test of being a state law which regulates insurance. Defendant does not present argument to the contrary.

The inquiry under ERISA does not necessarily stop at the question of whether it is a matter of common sense that the law regulates insurance. The policy against federal preemption of state regulation of insurance also finds expression in the McCarran-Ferguson Act,15 U.S.C. § 1012 (b), which provides:

> "(b) No act of Congress shall be construed to invalidate, impair or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance . . .'"
> (Emphasis supplied).

Case law suggests that in considering the ERISA savings clause, the Court go on to make

an analysis applying principles used in interpreting the McCarran-Ferguson statute. In decisions determining whether a practice constitutes the "business of insurance," under McCarran-Ferguson, a three-part test was enunciated by the Supreme Court: "first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry." Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 129 (1982).

ERISA excludes from preemption state laws which "regulate insurance." McCarran-Ferguson excludes state laws enacted "for the purpose of regulating the business of insurance." Given the differences in language, a more sophisticated analysis has been required in considering preemption under McCarran-Ferguson. The Parties have not presented analysis of whether it should be concluded that application of the McCarran--Ferguson test is always required, particularly when it is plainly obvious that the law regulates insurance.[3] Since the ERISA savings clause applies only when the state law "regulates insurance," the issue might be better addressed under the ERISA statute by focusing on whether a law truly "regulates" insurance, rather than considering the three-part McCarran-Ferguson test. Nonetheless, courts routinely recite that the McCarran-Ferguson three-part test must be applied in analyzing whether the ERISA exemption applies, (e.g., Prudential Ins. Co. v. National Park Med. Ctr., 154 F.2d 812, 827 (8th Cir. 1998)) and we have done so here.

---

[3] See Franklin H. Williams Insurance Trust v. Travelers Insurance Company, 50 F.3d 144 at 150 (2d Cir. 1995) raising questions as to the necessity of doing so.

The facts of this case are virtually identical to those presented to the court in Franklin H. Williams Insurance Trust v. Travelers Insurance Company, 50 F.3d 144 (2d Cir. 1995). The statute in question in Williams was a New York law which required the payment of interest on the proceeds of insurance from date of death, just like this case. And like this case, plaintiff's Complaint sought recovery of interest for himself and a class, computed under the state law. The District Court held that the state law was not preempted by ERISA, and the Court of Appeals affirmed on this point.[4]

The thorough and well-reasoned analysis of the Court of Appeals for the Second Circuit in Williams is persuasive. After concluding that the state law passed the common-sense test, the Court examined the McCarran-Ferguson standards.

> "It is not clear, however, that [the New York Law] satisfies all three of the McCarran-Ferguson standards. The date that interest accrues impacts to some degree upon a transfer of risk from the insured to the insurer, see United States Dep't of Treasury v. Fabe, 508 U.S. 491, ----, 113 S. Ct. 2202, 2209, 124 L.Ed.2d 449 (1993), by varying the amount paid to the insured upon the occurrence of the insured event or condition. The date chosen for the accrual of interest affects the policy relationship between the insurer and the insured, but it is arguable whether this choice is an 'integral part' of that relationship. On the other hand, both [the New York law] and the practice that it regulates are 'limited to entities within the insurance industry.'"

---

4

After concluding that the savings clause saved New York law from preemption, the District Court in Williams had gone on to conclude that the civil enforcement provisions of ERISA, 29 U.S.C. § 1132(a) did preempt private rights of action, and for this reason it denied the Motion to Remand. The Court of Appeals reversed as to this point, with directions that the Complaint be remanded to state court. Williams, 50 F.3d at 151. In its Notice of Removal, defendant stated: "This Court has original jurisdiction over this matter under 28 U.S.C. § 1331 because the state law claim asserted in the Complaint is preempted by [ERISA] and falls within the scope of ERISA's civil enforcement provision 29 U.S.C. § 1132(a)." In its Memorandum in Opposition, however, defendant has not sought to support the latter as a basis for denying remand, so we do not consider it here. If it were presented, we would reject it upon the same grounds as those of the Court in Williams.

Williams, 50 F.3d at 150. We concur with this reasoning.

The question of whether interest must be paid on proceeds of insurance from the date of death has an impact on the amount of risk being insured, just as an increase in the policy benefit would have. A policy insuring for $50,000 would have a different risk than a policy insuring for $100,000. Although the amount of interest in question may be small in an individual case, the cases do not distinguish between risks of different magnitude. Moreover, when multiplied by the thousands or millions of policyholders, the amount is material. Similarly, when properly viewed as affecting the amount of the policy benefit, it is properly seen to be "an integral part of the policy relationship between the insurer and insured." Finally, it is obvious that this law applies only to entities within the insurance industry, namely life insurance companies.

The section of Minnesota law relied upon by Plaintiff thus may be seen to "regulate insurance" under any of the appropriate tests to be applied. We are also persuaded by the following reasoning of the Court of Appeals in Williams:

> Unlike statutes that provide general remedies for unfair practice, fraud, and breach of contract, [the New York law] concerns the amount of the payment to which an insured is entitled. We believe that this provision is far more similar to the statute addressed in Metropolitan Life, and is precisely the type of statute that Congress intended to save from ERISA preemption. See Metropolitan Life, 471 U.S. at 744, 105 S. Ct. at 2391 (finding no "contrary case authority suggesting that laws regulating the terms of insurance contracts should not be understood as laws that regulate insurance"); cf. American Progressive Life and Health Ins. Co. v. Corcoran, 715 F.2d 784, 786 (2d Cir.1983) (state regulation setting maximum commission that life insurance salesmen may earn saved from preemption).

Williams, 50 F.3d at 151.

Defendant addresses the Williams opinion in two ways. First, it suggests that the Court should be guided instead by two district court decisions, in which claims based upon state law were found to be preempted by ERISA. Camire v. Aetna Life Ins. Co., Inc., 822 F. Supp. 846 (D. N.H. 1993), and Reid v. Gruntal & Co., Inc., 760 F. Supp. 945 (D. Maine 1991). We are not persuaded that these cases decide legal principles with reasoning which is at odds with Williams, but rather, they consider different statutes, applied to different Complaints.

In Camire, plaintiff's Complaint did not seek the recovery of interest under the state law. It sought "compensation for consequential damages resulting from Aetna's delay in paying the proceeds from the policy, including emotional distress, enduring eviction proceedings and bank foreclosure of his home, and sustaining damage to his credit and his standing in the community." Id., 822 F. Supp. at 848. The Court concluded that to the extent these allegations were claimed to be authorized by state law, the state law was preempted. It was not clear that the New Hampshire law authorized such damages, but it seems quite apparent that any state law authorizing such damages is a materially different from the Minnesota law upon which Plaintiff relies in this action.

Plaintiff did not respond to Defendant's reliance upon Reid, perhaps because it was merely cited by Defendant in a footnote. In Reid, the issue was whether the insurance company had properly denied disability benefits. As in Camire, the applicability of the state statute was not direct, and there are clear differences between the statute and Complaint presented in that case, and those in this case.

Defendant also argues: "Even if a statute is saved by ERISA's savings clause, the statute will still be preempted if it conflicts with a [specific] provision of ERISA. *Corporate Health Ins., Inc. v. Texas Dept of Ins.*, 215 F.3d 526, 538 (5th Cir. 2000); see also *Prudential Ins. Co. of America v. National Park Medical Center, Inc.*, 154 F.3d 812, 819 [(8th Cir. 1998)]." Defendant suggests that Williams should not be followed, because it considered a state law which does not conflict with a specific provision of ERISA, whereas the Minnesota law at issue in this case does conflict with ERISA. It then quotes Minn. Stat. § 61A.011, subdivision 2, and states: "ERISA's savings clause has no application to state statutes like § 61A.011 that penalize for vexatious, dilatory or improper benefit payments under an ERISA plan." Later in its Memorandum, Defendant argues: "The two percent penalty in § 61A.011 is fatal to Haag's argument that the savings clause requires remand."

The difficulty with Defendant's argument is that it compares the New York law saved in Williams with the wrong Minnesota law. Defendant does not make it readily apparent that it is discussing subdivision 2, not subdivision 1 of § 61A.011 when making these arguments.[5] Defendant improperly implies that Plaintiff is relying on Subdivision 2

---

[5] Minn. Stat. § 61A.011, Subd. 2 provides: "Notwithstanding the provisions of subdivision 1, if an insurer admitted to transact life insurance in this state does not pay within 60 days after receipt of due proof of death of the insured, the proceeds or payments under any policy of life insurance, individual or group, such insurer shall pay interest at an annual rate that is two percent more than the rate of interest provided for in subdivision 1. Such interest shall be computed from the date of the insured's death until the date of payment, on any such proceeds or payments payable to a beneficiary residing in this state, or to a beneficiary under a policy issued in this state or to a beneficiary under a policy insuring a person resident in this state at the time of death. Interest payments under this subdivision shall be in lieu of interest payments required under subdivision 1."

of Minn. Stat. § 61A.011, (which does impose a penalty) rather than Subdivision 1 of that statute (which does not). The difference is material and dispositive. While it may be that a state law imposing penalties on an insurance company for late payment of insurance proceeds would not properly be held to "regulate insurance" within the meaning of ERISA, the provisions of a law requiring insurance companies to pay interest on life insurance proceeds does regulate insurance.

## RECOMMENDATION

We conclude that Minn. Stat. § 61A.011, Subd. 1 is a Minnesota law which regulates insurance within the meaning of the ERISA clause which saves such laws from preemption, 29 U.S.C. § 1144(b)(2)(A). Since that Minnesota statute is not preempted by ERISA, there is no federal jurisdiction over Plaintiff's Complaint. Accordingly, we recommend that Plaintiff's Motion to Remand [Docket No. 17] be granted, and that this case be remanded to the Minnesota District Court, First Judicial District.

Dated: February 21, 2002

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before March 8, 2002 a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before March 8, 2002.